**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

IN RE:

SHORES OF PANAMA, INC.,                                    CASE NO.:  08-50066-LMK

  Debtor.                                                        CHAPTER:  11

_____/

## ORDER GRANTING MOTION FOR (1) RELIEF FROM THE AUTOMATIC STAY AND (2) TO COMPEL ARBITRATION

THIS MATTER was heard March 31, 2008 on the Motion for (1) Relief from the Automatic Stay and (2) to Compel Arbitration (the "Motion," Doc. 17), which was filed by Creditor C.F. Jordan Residential, L.P. ("Jordan").  The Motion seeks relief from the automatic stay so that Jordan may continue with pre-petition arbitration against the Debtor and proceed against an irrevocable letter of credit which was issued by Vision Bank FSB.  The question is whether there is cause to lift the automatic stay so that the parties may arbitrate their contract dispute pursuant to a pre-petition arbitration agreement.  After consideration of the case file, hearing the argument of counsel, and being otherwise fully informed in the premises, the Motion will be granted for the reasons explained herein.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(G).

### *Background*

The Debtor developed the Shores of Panama condominium project in Panama City Beach, Florida and is presently marketing residential and commercial condominium units for sale or lease there.  The Debtor hired Jordan as the general contractor to build the project.  The contract between the parties contained a clause providing that any and all disputes would be resolved by binding arbitration.  *See AIA Standard Form Agreement Between Owner and Contractor* (Doc.

17, Exs. A and B).  A dispute arose between the Debtor and Jordan, which was submitted to and resolved in arbitration on November 16, 2006.  A second dispute has arisen in which Jordan has made claims against the Debtor and the Debtor has asserted counterclaims against Jordan (the "Action").  Jordan demanded arbitration pursuant to the arbitration clause on September 5, 2006. In the Action, substantial discovery has proceeded, experts have been retained, and arbitration of Jordan's claims and the Debtor's counterclaims were set to be heard before the arbitration panel on July 14-25, 2008.  Jordan's claims against the Debtor were automatically stayed by 11 U.S.C. § 362 when the Debtor filed its voluntary Chapter 11 petition on February 26, 2008.  Jordan filed the Motion seeking relief from the automatic stay on March 5, 2008.  Jordan has not yet filed a formal proof of claim.

*Discussion*

The standard for determining whether arbitration agreements should be enforced in bankruptcy was set out in *The Whiting-Turner Contracting Co. v. Electric Machinery Enterprises, Inc. (In re Electric Machinery Enterprises, Inc.)*, 479 F.3d 791 (11th Cir. 2007), where a subcontractor filed a voluntary Chapter 11 petition and then sought turnover from the general contractor of amounts allegedly due from the settlement of a contract dispute with the property owner. *Electric Machinery*, 479 F.3d at 793-95.  The general contractor sought to compel arbitration in accordance with the pre-petition agreement of the parties and the Federal Arbitration Act, 9 U.S.C. § 2.  *Id.*  In determining whether the arbitration agreement should be enforced, the Eleventh Circuit concluded that bankruptcy courts should first distinguish between core and non-core proceedings.  *Id.* at 796.  If the proceeding is non-core, the bankruptcy court has no discretion and must compel arbitration.  *Id.*  If the proceeding is core, the bankruptcy court should go

2

on to determine "whether enforcing a valid arbitration agreement would inherently conflict with the underlying purposes of the Bankruptcy Code." *Id.*

Congress separated Title 11 proceedings into core and non-core proceedings in 28 U.S.C. § 157.[1]  The bankruptcy judge is empowered to enter final orders in core proceedings, 28 U.S.C. § 157(b)(1), but absent consent of the parties merely "submit[s] proposed findings of fact and conclusions of law to the district judge" in non-core proceedings, 28 U.S.C. § 157(c)(1).  Congress has provided a non-exclusive list of core proceedings in 28 U.S.C. § 157(b)(2).  With respect to proceedings that do not fall within any of the categories enumerated in 28 U.S.C. § 157(b)(2), the Eleventh Circuit has explained that

> if the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding.  A proceeding is also considered core if the proceeding is one that would arise only in bankruptcy.  A proceeding is not core if the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy.

*Electric Machinery*, 479 at 797 (internal quotations and citations omitted).

Whether the Action which Jordan is seeking to arbitrate is core or non-core is not without uncertainty.  *See generally Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989).  Arguably, it could fall under 28 U.S.C. §§ 157(b)(2)(B), 157(b)(2)(C), 157(b)(2)(A), or 157(b)(2)(O).  Yet, the Action is a contract dispute governed entirely by state law; it does not invoke a substantive right created by federal bankruptcy law and is a claim that exists outside of bankruptcy.

It is not necessary to delineate with precision the contours of core as opposed to non-core proceedings in this case because, assuming that Jordan's Action is core, enforcing the arbitration provision would not inherently conflict with the underlying purposes of the Bankruptcy Code. *See Electric Machinery*, 479 F.3d at 799; *see also In re Farmland Industries, Inc.,* 309 B.R. 14,

---

[1]  Congress enacted 28 U.S.C. § 157 in reaction to *Northern Pipeline Construction Co. v. Marathon Pipe Line Company,* 458 U.S. 50 (1982).

21 (Bankr. W.D. Mo. 2004) (stating that the "enforcement of an arbitration clause arising out of litigation involving solely pre-petition contracts that are only core inasmuch as they involve seeking relief from the automatic stay to proceed to arbitration and determining the allowed amount of a proof of claim under applicable state law have been found not to conflict with the underlying provisions of the Bankruptcy Code") (citing *In re Statewide Realty Co.,* 159 B.R. 719, 722, 724 (Bankr.D.N.J.1993); *United States Lines, Inc. v. American Steamship Owners Mutual Protection & Indemnity Ass'n, Inc. (In re United States Lines, Inc.),* 197 F.3d 631, 640 (2nd Cir.1999)).

Nevertheless, the Debtor has argued that the bankruptcy policy of centralization inherently conflicts with the enforcement of the arbitration agreement.  A centralized forum for the resolution of the debtor's multitudinous disputes avoids uncoordinated, far-flung proceedings in multiple fora, which is important to the efficiency of the reorganization process and the protection of all creditors.  *See, e.g., United States Lines, Inc.*, 197 F.3d at 640 (quoting *Shugrue v. Air Line Pilots Ass'n Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 989 (2d Cir. 1990)).  However, enforcing the parties' arbitration agreement in this case will not seriously jeopardize the Debtor's attempt to reorganize.  Although arbitration may be inconsistent with the policy of centralization, such inconsistency does not rise to the level of an inherent conflict.  *In re Farmland Industries, Inc.,* 309 B.R. 14, 21 (Bankr. W.D. Mo. 2004) (stating that "the delay, expense, and effort required by the parties to arbitrate their dispute are not materially different than if the matter would be allowed to continue in the bankruptcy court, and theoretically, each forum should reach the same result.  Any impact on the Bankruptcy Code's policies of centralized claim resolution and prohibition of piecemeal litigation is *de minimis*"); *Friedman's, Inc. v. Ernst & Young, LLP (In re Friedman's, Inc.)*, 372 B.R. 530, 541-44 (Bankr. S.D. Ga. 2007).  The policy of centralization alone does not trump an otherwise enforceable arbitration agreement.

4

The Debtor is also suggesting that the bankruptcy policy of equal distribution inherently conflicts with arbitration. The Debtor asserts that other creditors could be affected by the outcome of the arbitration even though they will not be able to participate in it, explaining that subcontractors are also entitled to draw on the letter of credit. However, the letter of credit is not property of the bankruptcy estate, *see First Fid. Bank, N.A. v. Prime Motor Inns, Inc. (In re Prime Motor Inns, Inc.)*, 130 B.R. 610, 613-14 (S.D. Fla. 1991); *In re M.J. Sales & Distributing Co., Inc.*, 25 B.R. 608, 614-16 (Bankr. S.D.N.Y. 1982), and the other parties can assert their rights to the extent they have standing. The Debtor is essentially arguing that arbitration should not be enforced because the outcome will have an impact on the ultimate distribution of the estate since all creditors will eventually be paid from the same pot of money. This connection is too tangential to disregard the agreement to arbitrate and does not present an inherent conflict with the Bankruptcy Code. *Farmland Industries*, 309 B.R. at 21 (stating that, although parties other than the debtor may be affected by the outcome, "the interest of non-debtor parties in the outcome of the litigation is [not] sufficient for the Court to abrogate a portion of a valid, pre-petition, non-executory contract"). The determination of any one claim will impact on the amount of money that eventually goes to other creditors since all creditors share *pro rata* unless the plan provides otherwise. However, this does not mean that all claims must be liquidated in a bankruptcy court or that it inherently conflicts with bankruptcy policy for a state-law claim to be determined in a nonbankruptcy forum. Besides, another important policy of bankruptcy is the preservation of creditors' nonbankruptcy rights to the extent possible while carrying out the purposes of the Bankruptcy Code.

Furthermore, "the policy behind Chapter 11 Reorganization [generally] recognizes the expedient and economic resolution of business affairs." *In re Statewide Realty Company*, 159 B.R. 719, 724 (Bankr. D. N.J. 1993). In this case, the parties have already initiated discovery in the

arbitration proceedings—indeed the Action, which was submitted to arbitration in 2006, was scheduled to be heard before the arbitration panel on July 14-25, 2008—and at least some pre-liminary matters have already been addressed there.  In addition, the arbitration panel is experienced in resolving construction disputes and appears to have some familiarity already with the issues raised in this dispute.  *See In re Bicoastal Corp.*, 111 B.R. 999 (Bankr. M.D. Fla. 1990).  Therefore, the arbitration panel will probably resolve the parties' disputes more quickly than this Court, which would further an expeditious reorganization for the Debtor while conserving judicial resources.

## *Conclusion*

Jordan has requested relief from the automatic stay in order to enforce an agreement to arbitrate a contract dispute that is governed entirely by state law.  Assuming the Action to resolve this dispute is a core matter, enforcing the arbitration provision would not inherently conflict with the underlying purposes of the Bankruptcy Code.  Accordingly, it is hereby

ORDERED and ADJUDGED that the Motion of Creditor C.F. Jordan Residential, L.P. for (1) Relief from the Automatic Stay and (2) to Compel Arbitration (Doc. 17) is GRANTED.

DONE and ORDERED in Tallahassee, Florida this 20th day of May, 2008.

_____
LEWIS M. KILLIAN, JR.
United States Bankruptcy Judge

cc:  all parties in interest