IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

In Re:

                                      **Chapter 11**

**SHORES OF PANAMA, INC.,**                      **Case No.: 08-50066-LMK**

       **Debtor.**

_____/

## OBJECTION TO NOTICE OF INTENTION
## TO SELL PROPERTY OF THE ESTATE (DOC. 1168)

COMES NOW, Federal Deposit Insurance Corporation, as Receiver for Silverton Bank, N.A. (the "FDIC-R"), by and through its undersigned counsel, and files this objection to the Chapter 7 Trustee's Notice of Intention to Sell Property of the Estate (Doc. 1168) and states as follows:

### Introduction

The Chapter 7 Trustee, Karin A. Garvin, (the "Trustee") filed a Notice of Intention to Sell Property of the Estate ("Notice of Intention"), proposing to sell to Charles K. Breland ("Breland"), principal of the Debtor, Shores of Panama, Inc., the estate's purported interest in certain "property" described therein. As set forth in the Notice of Intention, the "property" is vaguely described as "choses in actions, claims, demands, and rights" arising out of, or related to, two transfers of real property. The FDIC-R objects to the Notice of Intention on the grounds that the proposed sale does not satisfy the business-judgment rule because (1) Breland has improper and bad faith motives for purchasing the "property;" (2) the Notice of Intention fails to sufficiently describe the property that is to be sold; and (3) Breland is attempting to purchase property that does not exist.

**Procedural History**

Shores of Panama, Inc. ("Debtor") was the owner and developer of a certain condominium project located in Bay County, Florida (the "Condominium Project"). The Condominium Project was subject to two mortgages securing two promissory notes (collectively, the "Loans") executed and delivered by Debtor to Vision Bank. Debtor's principal, Breland, executed personal guarantees for the Loans.

On February 26, 2008, Debtor filed its voluntary petition (the "Shores Bankruptcy Case") under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Vision Bank filed a secured proof of claim in the amount of $73,290,625.22. Vision Bank subsequently assigned all of the Loan Documents, together with its claim in the Debtor's bankruptcy, to Silverton Bank, N.A. ("Silverton"). (Doc. 479).

Pursuant to Section 363 of the Bankruptcy Code, the Condominium Project was sold to a wholly owned subsidiary of Silverton, created solely for the purpose of taking title to the Condominium Project, pursuant to an Order authorizing and approving the sale entered March 6, 2009 (the "Sale Approval Order"). (Doc. 640). The Sale Approval Order provided that upon the closing of the sale, the Condominium Project would be transferred "free and clear of all Interest and Claims" and removed the "Interest and Claims Identified on Exhibit D." (Doc. 640, p.8 ¶11).

Exhibit D referenced five easement agreements (the "Affiliate Easements") entered into by the Debtor and Shores of Panama Community Association Inc. (the "Community Association") with and in favor of the Club at Shores of Panama, Inc. ("Shores Club"), Shores of Panama Restaurant Holdings, LLC ("Shores Restaurant"), BB Communications, LLC ("BB Communications"), and Shores Beach Services, LLC ("Shores Beach") (collectively, the

2

"Affiliate Entities"). Breland was the principal and President of the Debtor; the President of the Community Association; and the principal, president, and/or managing member of all of the Affiliate Entities.

In addition to providing that the Condominium Project would be conveyed free and clear of the Affiliate Easements, the Sale Approval Order further provided that "[a]ny such parties asserting Interests or Claims on the Property…are hereby enjoined and prevented from pursuing Purchaser for any liabilities related in any way to the Debtor…including any liabilities based upon any theories of successor or transferee liability of any nature whatsoever." (Doc. 640, ¶11). The Sale Approval Order further provided that "[a]ll persons and entities holding Interests and Claims of any kind and nature asserted or unasserted with respect to the Property…hereby are barred from asserting such Interests and Claims of any kind and nature against Purchaser, its successors or assigns, or the Property." (Doc. 640, ¶12). The Court defined the term "Interests" to mean "all liens, interests, contract rights, easements and encumbrances of any kind or nature," and the term "Claims" to mean the definition set forth in Bankruptcy Code § 101(5). (Doc. 640, ¶(q)(i)).

On March 26, 2009, pursuant to the Sale Approval Order, Breland, on behalf of the Debtor, executed and delivered a special warranty deed (the "Deed") conveying the Condominium Project to Silverton's wholly owned subsidiary. The Deed specifically referenced the Sale Approval Order by Bankruptcy Court case number and docket number, and stated that the Deed was subject to the provisions of the Sale Approval Order. Presumably, this sale is the 2009 transfer of the Condominium Project referenced in the Notice of Intention.

3

The purchaser at the Section 363 sale later resold the Condominium Project to various good faith purchasers for value including Panama Holdings, LLC; Panama Partners, LLC; Shores of Panama, LLC; Shores of Panama Club, LLC; and Shores of Panama Commercial, LLC (collectively, the "Bulk Buyers"). The sale to the Bulk Buyers in 2012 is presumably the other sale referenced in the Notice of Intention.

On May 1, 2009, the Office of the Comptroller of the Currency closed Silverton and the Federal Deposit Insurance Corporation (the "FDIC") was appointed as its receiver. The FDIC accepted its appointment as receiver for Silverton pursuant to 12 U.S.C. § 1821(c)(3)(A). Pursuant to 12 U.S.C. §1821(d)(2)(A), the FDIC-R thereby succeeded as a matter of law to all rights, titles, powers, and privileges of Silverton. Following its appointment as Receiver, the FDIC-R timely filed an amended proof of claim in the Shores Bankruptcy Case in the amount of $5,840,625.22, representing a claim for amounts owed "after credit for collateral sold."

On March 11, 2009, Breland filed a Chapter 11 bankruptcy case in the U.S. Bankruptcy Court for the Southern District of Alabama, Case No. 09-11139 (the "Breland Bankruptcy Case"). The FDIC-R subsequently filed a proof of claim in the Breland Bankruptcy Case based on Breland's guarantees of the Loans. Breland filed an objection to the FDIC-R's proof of claim, based partly on the argument that the FDIC-R was collaterally estopped from pursuing the guarantees because of the Sale Approval Order entered in the Shores Bankruptcy Case. In the instant case, the Trustee, the FDIC-R, and Breland subsequently entered into a settlement and release agreement with respect to the disputed claims (the "Settlement and Release Agreement") (Doc. 1038), and this Court entered an order approving the Settlement and Release Agreement on May 31, 2011 (the "Settlement Approval Order"). (Doc. 1055). Pursuant to the terms of the

Settlement and Release Agreement, the Trustee and Breland each expressly released the FDIC-R and its successors and assigns from "all claims [the Trustee and Breland] may have against the FDIC." (Doc. 1038, Exhibit A, ¶ 8(a)).

More than four (4) years following the entry of the Sale Approval Order in the Shores Bankruptcy Case, the Affiliate Entities and Breland filed a motion seeking relief from the Sale Approval Order in an attempt to revive the alleged interests of the Affiliate Entities and Breland in the Condominium Project. (Doc. 1073). This Court denied the motion for relief as untimely under Rule 60(c)(1), *Federal Rules of Civil Procedure*. (Doc. 1107). The Affiliate Entities and Breland appealed the order denying the motion for relief to the United States District Court for the Northern District of Florida, Case No. 5:14-cv-00042-RS-EMT. The appeal has been fully briefed and is awaiting the District Court's decision.

## Argument

The FDIC-R objects to the Notice of Intention because there is no legitimate business reason to grant the application for sale. In determining an application for a Section 363(b) sale, the bankruptcy court must expressly find a good business reason to grant the application. *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983). This determination requires the court to "consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditor, and equity holders, alike." *Id*. The burden is on the Trustee to establish a sound business reason for the terms of the proposed sale. *In re Gulf States Steel, Inc. of Alabama*, 285 B.R. 497, 514 (Bankr. N.D. AL 2002). In determining whether to approve the sale, factors for the court to consider include: "(1) any improper or bad faith motive; (2) price is fair and the negotiations or bidding occurred at arm's length, (3) adequate procedure,

including proper exposure to the market and accurate and reasonable notice to all parties in interest." *Id.* As discussed herein, at least two of these factors weigh heavily against approving the sale.

### 1. **Improper or bad faith motive**

A review of the procedural history reveals an improper or bad faith motive behind the proposed sale. Breland's attempt to purchase the Trustee's rights constitutes nothing more than a transparent attempt to launch further impermissible collateral attacks on the Sale Approval Order, in violation of the injunctive provisions contained therein. Approval of the proposed sale serves only to perpetuate Breland's baseless litigation.

Undeterred by this Court's previous refusal to set aside the Sale Approval Order (Doc. 1107), Breland has now turned to the state courts, effectively seeking the same relief this Court previously refused to grant. Any claim related to the prior sale of the Condominium Project represents an impermissible collateral attack on the Sale Approval Order and is barred by res judicata.

In the case of *In re CHC Industries, Inc*, 389 B.R. 767 (Bankr. M.D. Fla. 2007), the bankruptcy court dealt with similar facts. In that case, the Chapter 11 debtor filed a motion seeking authority to sell certain property of the estate free and clear of liens in favor of C.E.K., Inc. ("C.E.K."). *Id*. at 768. The bankruptcy court entered an order granting the debtor's motion, and the sale closed in accordance with the order. *Id*. at 769.

The debtor subsequently filed suit in state court against the brokers whom the debtor had employed in connection with the sale of the property, asserting various causes of action for alleged improper conduct that allegedly caused the debtor to receive less than maximum value

for the property. *Id.* The complaint in the state-court action was later amended to include C.E.K. and others for alleged negligent misrepresentation in relation to the sale of the property. *Id*. The state-court action was stayed pending the entry of an order by the bankruptcy court determining whether the sale order barred or impacted any of the claims asserted in the state-court action. *Id.* at 770. The defendants in the state-court action argued that the sale order was a final order that was entitled to a preclusive effect under the principles of res judicata and collateral estoppel. *Id.* The debtor argued that the subsequent claims were not barred by the sale order because they sought damages resulting from improper conduct of the parties involved in the sale and were not barred by any preclusive effect of the sale order. *Id*.

The court determined that even though the debtor was not expressly seeking to set aside the prior sale, the debtor's claims for damages constituted an attempt to unravel the economic effect of the sale. *Id*. at 775. The court further held that the relief sought by the debtor would disturb key findings of the sale order, including the express determination that C.E.K. had acted in good faith in connection with its purchase of the property. *Id.* As such, the claims asserted in the state-court action were impermissible collateral attacks on the sale order and the debtor was barred from asserting them in the state-court action. *Id*. at 775.

In reaching this decision, the court in *CHC Industries* relied heavily on the case of *In re Farmland Industries, Inc*., 376 B.R. 718 (Bankr. W.D. Mo. 2007). In *Farmland*, an unsuccessful bidder to a Section 363 sale filed a state-court complaint alleging that the defendants had conspired to keep it from participating in the bidding process and that the defendants made misrepresentations to the court in obtaining approval of the sale. *Id*. at 721-724. The bankruptcy court determined that the claims should be dismissed because the claims were prohibited

collateral attacks on the sale order. *Id*. at 726.  In reaching this determination, the bankruptcy court stated that "[t]he fact that [the plaintiff] does not seek to undo the sale with regard to title is not dispositive; it is sufficient that the [p]laintiff is seeking to undo the economics of the sale by seeking damages against [the buyer], placing itself in [the buyer's] economic position as the successful buyer. *Id*. at 726.

In the instant case, Breland appears to be attempting to purchase certain claims and rights arising out of the previous Section 363 sale of the Condominium Project in order to obtain damages related thereto.  Pursuant to the language of the Sale Approval Order, the Affiliate Entities are expressly enjoined and barred from pursuing the Purchaser or its assigns for "any liabilities related in any way to the debtor." (Doc. 640, ¶¶11).  Further, the Sale Approval Order expressly barred "[a]ll persons and entities holding Interests and Claims of any kind and nature asserted or unasserted with respect to the Property" against the Purchaser, its successors or assigns, or the Condominium Project.  (Doc. 640, ¶12).  Based on the parties listed in the description of the two state-court actions in the Notice of Intention, the plaintiffs in each action include the Affiliate Entities.  In addition, at least one of the actions appears to be against the Bulk Buyers.  Based upon the parties to the cases alone, it appears Breland is attempting to purchase the estate's alleged interest in any actions or claims related to the prior sale of the Condominium Project, not only to collaterally attack the Sale Approval Order, but also to assert claims in direct violation of the injunction imposed by the Sale Approval Order.  Given the express language of the injunction, and because no person may bring a collateral attack on the Sale Approval Order, Breland's attempt to purchase standing in order to pursue these claims is in bad faith and not based on any proper motive.

Further evidence of an improper motive comes from the fact that the "property" that Breland seeks to purchase has no economic value. The only purpose for Breland's purchase of these rights is to facilitate Breland's continued pursuit of baseless litigation, and assist in further violation of the injunction imposed by the Sale Approval Order.

**2. Insufficient Property Description**

The FDIC-R also objects to the Notice of Intention because it fails to sufficiently describe the property to be sold. Rule 2002(c)(1), *Federal Rules of Bankruptcy Procedure*, sets forth the required content of a notice of the proposed sale of property of the estate. Under this Rule, the notice must generally describe the property to be sold. Fed. R. Bankr. P. 2002(c)(1). The Notice of Intention describes the property to be sold in vague terms:

> "any and all of the estate's interest, if any, in all choses in actions, claims, demands, and rights, including the proceeds thereof, arising out of the matters included in the events related to, or out of, the transfer of real property containing the luxury waterfront residential condominium project known as "Shores of Panama" [ ] to Silverton Bank in the spring of 2009 and the sale of the Property to the bulk buyers in the summer of 2012, including, but not limited to, the following State Court Actions."

The Notice of Intention then sets forth the parties and case numbers of two pending state-court actions. The Notice of Intention fails to disclose that the 2009 transfer was actually a Section 363 sale or that the Bulk Buyers of the 2012 sale were the successors or assigns of the Section 363 sale purchaser.

Based on this vaguely-worded description, it is unclear precisely what assets Breland is attempting to purchase. The Notice of Intention fails to attach any contract or proposed conveyance instrument describing the property to be sold. In addition, the Notice of Intention lists two state-court cases, without attaching copies of either complaint, without providing a

Further evidence of an improper motive comes from the fact that the "property" that Breland seeks to purchase has no economic value. The only purpose for Breland's purchase of these rights is to facilitate Breland's continued pursuit of baseless litigation, and assist in further violation of the injunction imposed by the Sale Approval Order.

**2. Insufficient Property Description**

The FDIC-R also objects to the Notice of Intention because it fails to sufficiently describe the property to be sold. Rule 2002(c)(1), *Federal Rules of Bankruptcy Procedure*, sets forth the required content of a notice of the proposed sale of property of the estate. Under this Rule, the notice must generally describe the property to be sold. Fed. R. Bankr. P. 2002(c)(1). The Notice of Intention describes the property to be sold in vague terms:

> "any and all of the estate's interest, if any, in all choses in actions, claims, demands, and rights, including the proceeds thereof, arising out of the matters included in the events related to, or out of, the transfer of real property containing the luxury waterfront residential condominium project known as "Shores of Panama" [ ] to Silverton Bank in the spring of 2009 and the sale of the Property to the bulk buyers in the summer of 2012, including, but not limited to, the following State Court Actions."

The Notice of Intention then sets forth the parties and case numbers of two pending state-court actions. The Notice of Intention fails to disclose that the 2009 transfer was actually a Section 363 sale or that the Bulk Buyers of the 2012 sale were the successors or assigns of the Section 363 sale purchaser.

Based on this vaguely-worded description, it is unclear precisely what assets Breland is attempting to purchase. The Notice of Intention fails to attach any contract or proposed conveyance instrument describing the property to be sold. In addition, the Notice of Intention lists two state-court cases, without attaching copies of either complaint, without providing a

description of the nature of either action, and without identifying the circuit in which either case is currently pending. The FDIC-R notes, however, that the Plaintiffs to each action include the Affiliate Entities and Breland, and at least one of the cases appears to be against the Bulk Buyers. Without any further description of the nature of either state-court action, it is unclear what "choses in action, claims, demands, and rights" the Affiliate Entities could be asserting in either action related to the Condominium Project, especially when their assertion of these rights have been enjoined. As filed, the Notice of Intention creates doubt and confusion as to the precise "property" that Breland is attempting to purchase, and therefore is not proper notice under Rule 2002.

### 3. **Breland Cannot Purchase Property the Estate Does Not Own.**

"[I]t is self-evident that the Trustee can only sell property of the estate." *In re Southwest Florida Heart Grp., P.A.*, 342 B.R. 639, 644 (Bankr. M.D. Fla. 2006). Based on the vague and overbroad wording of the Notice of Intention, it appears that Breland is attempting to purchase interests that are no longer property of the estate or that no longer exist because of the Sale Approval Order and the Settlement and Release Agreement.

As previously discussed, not only does the Sale Approval Order enjoin the Affiliate Entities from pursuing the Purchaser, its assigns, or successors for any liabilities related to the sale, the Sale Approval Order also prohibits "[a]ll persons and entities holding Interests and Claims of any kind and nature" from pursuing such Claims or Interest against the Purchaser, its successors, or assigns, or the Property. (Doc. 640, ¶¶11-12). In addition, pursuant to the Settlement and Release Agreement executed by the Trustee and Breland, and approved by this Court, the Trustee and Breland each expressly released the FDIC-R from any claims the estate or

10

Breland had against the FDIC-R, and significantly, its successors and assigns. (Doc. 1038, Exhibit A, ¶8(a)). Based on the vague and broadly-worded Notice of Intention, it appears Breland is attempting to purchase rights that he and the Trustee have already expressly released or waived, or that were previously extinguished by the Sale Approval Order.

To the extent that Breland is attempting to purchase "assets" which no longer exist, a Section 363 sale is improper. *See, e.g., In re Franklin County Visiting Nurses Ass'n, Inc.*, 73 B.R. 280 (Bankr. N.D. Fla. 1987) (vacating a Section 363 sale where property to be sold included the operating authority and a certificate of need for a home health care agency, where it was later discovered that the debtor's license to operate the business and the certificate of need had expired prior to the court's confirmation of the sale). To permit the sale of previously extinguished or released rights, claims, or interests would be in contravention of, and in derogation of, this Court's Sale Approval Order and the Settlement and Release Agreement approved by this Court.

## Conclusion

On its face, the Notice of Intention is overbroad, and appears to encompass claims, rights, and interests that were extinguished or waived by operation of the Sale Approval Order and the Settlement and Release Agreement. Breland's attempt to purchase these nonexistent claims, rights, and interests that were previously extinguished or released is in bad faith and without any proper motive. These factors weigh heavily against a finding that there is a legitimate business purpose for the sale, so this Court should refuse to permit the proposed sale.

WHEREFORE, the FDIC-R respectfully requests that this Court sustain the FDIC-R's Objection to the Notice of Intention to Sell Property of the Estate, and deny any proposed motion

to approve or authorize the sale without an evidentiary hearing, and provide such further relief as this Court deems proper.

>
> **SAXON, GILMORE, CARRAWAY & GIBBONS, P.A.**
> 201 E. Kennedy Blvd., Ste. 600
> Tampa, FL 33602
> Telephone (813) 314-4500
>
> /s/  David J. Tong, Esq.
> DAVID J. TONG, ESQUIRE
> Florida Bar No. 437085
> dtong@saxongilmore.com
> Attorney for Federal Deposit Insurance Corporation, as Receiver for Silverton Bank, N.A.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true a correct copy of the foregoing notice has been filed electronically with the Court and furnished by U. S. Mail or via the Courts electronic case filing/case management system to all creditors on the attached matrix (Order Granting Trustee's Motion to Limit Service Doc #1156) on the date this document was filed with the Court. *Note: for verification of the date of service, please check the docket entry for this document.*

>
> /s/  David J. Tong, Esq.
> DAVID J. TONG, ESQUIRE

Atlas Comfort Systems USA, LLC
c/o Larry Foyle, Esq
PO Box 800
Tampa, FL 33601

Burke Blue Hutchison & Walters, PA
221 McKenzie Avenue
Panama City, FL 32402

C.F. Jordan Residential, LP
c/o Harrel L Davis, III, Esquire
Gordon Mott & Davis PC
PO Box 1322
El Paso TX 79912

Channell Douglas Properties
Mike Douglas
1506 Ben Drive NE
Jacksonville, AL 36256

Charlotte, LLC
8585 Grove Hill Rd
Rockford, IL 61107

Danny & Shannon Meserole
Tracy Mizell & Thomas Braxton
485 John Elliot Road
McDonough GA 30252

Jeannie Shipman
c/o Louis L Long, Jr. Esq
1201 Eglin Parkway
Shalimar, FL 32579

Jesse & Jan Galatas
1117 Shirley Drive
Metairie, LA 70001

John and Julie Ballard
Diane and Kelly Sharpe
c/o Robert Buesing
PO Box 1102
Tampa, FL 33601

John and Julie Ballard
76 Bainbridge Dr
Alexander City, AL 35010

Kevin Hoffield
1721 Manson Avenue
Metairie, LA 70001

Kyle Gerber
c/o Louis L Long, Jr. Esq
1201 Eglin Parkway
Shalimar, FL 32579

Long Beach Resort Community Assoc
c/o John Cottle
348 Miracle Strip Pkwy., Ste 7
Ft. Walton Beach, FL 32548

Marie Gross
c/o Joseph Silva, Jr.
PO Box 2088
Panama City. FL 32401

Mary Jo Gerber Revocable Trust
c/o Louis L Long, Jr. Esq
1201 Eglin Parkway
Shalimar, FL 32579

Michael and Pauline Pancake
2499 Chaucer PL
Thousand oaks, CA 91362

Osiris, Inc
c/o Robert E Moore, CEO
2569 NE Cherry Lake Circle
Pinetta, FL 32530

Phat Than Le and Vivian Tran Le
2217 Wendell Avenue
Louisville, KY 40205-3063

Phat Than Le and Vivian Tran Le
c/o Brian D Hess
PO Box 9454
Panama City, FL 32417-9454

Power Designs, Inc
c/o Robert S Jones, II, Esq
PO Box 17434
Clearwater, FL 33762

Robert C. Harbour
3115 Brittany Pl
Pensacola, FL 32504

Theresa M Tomoser
c/o Christiane Smallwood Miranda
404 Jenks Avenue
Panama City, FL 32401

Ashley B Rogers, Esq
Chesser & Barr, PA
398 North Main Street, Ste B
Crestview, FL 32536

Joseph R Schwab
Dwayne R Schwab
c/o Yancey F Langston, Esq
220 W Garden Street, 9th Floor
Pensacola, FL 32502

Monica Rigsby
432 Riverwalk
McDonough, GA 30252-9013

Jennifer K. Merritt
405 Crackerneck Road
Armuchee, GA 30105-2568

John E Venn, Jr Esq
220 W Garden Street, Ste 603
Pensacola, FL 32502

Arthur A. Shimek
423 N. Baylen Street
Pensacola, FL 32501-3901

FDIC
c/o Tabitha S Etlinger, Esq
201 E Kennedy Blvd., #600
Tampa, FL 33602

FDIC
c/o David J Tong, Esq
201 E Kennedy Blvd., Ste 600
Tampa, FL 33602

Roland W Kiehn, Esq
Barron & Redding, PA
PO Box 2467
Panama City, FL 32402

Michael P Dickey, Esq.
PO Box 2467
Panama City, FL 32402-2467

Joseph P and Linda J Anello
15 Greene Court
Happauge, NY 11788-4355

BankTrust
c/o Robert P. Reynolds, Esq
PO Box 2863
Tuscaloosa, AL 35403

Steven L. Applebaum, Esq.
PO Box 9454
Panama City Beach, FL 32417

Equity Trust Co FBO David E. Hudgens
IRA 4145
PO Box 1574
Daphne, AL 36526

Trimar Properties
c/o David B Taylor, Esq
501 Commendencia Street
Pensacola, FL 32502

Ronald Cutler, Esq.
1172 Pelican Bay Dr
Daytona Beach, FL 32119-1381

Bank of Vernon
c/o Robert P Reynolds, Esq
PO Box 2863
Tuscaloosa, AL 35403

Jason Eagan, Esq
Office of US Trustee
110 East Park Avenue, Ste 128
Tallahassee, FL 32301

H. Lawrence Perry, Esq
2612 West 15th Street
Panama City, FL 32401

Jill W Crew, Esq.
Crew & Crew, PA
25 Beal Pkwy NE, Ste 210
Ft. Walton Beach, FL 32548

Michael H. Crew, Esq
Crew & Crew, PA
25 Beal Pkwy NE, Ste 210
Ft. Walton Beach, FL 32548

Walter Noeske
c/o Justin Remol
543 Harbor Blvd. Ste 501
Destin, FL 32542

FL Dept of Revenue
Bankruptcy Unit
PO Box 6668
Tallahassee, F 32314-6668

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Florida Dept of Labor
c/o FL Dept of Revenue
PO Box 6668
Tallahassee, FL 32314-6668

Secretary of the Treasury
US Treasury Dept
15th & Pennsylvania Ave
Washington, DC 20220-0001

Shores of Panama Community Assoc
c/o James M Donohue
PO Box 391
Tallahassee, FL 32302-0391

US Securities and Exchange Commission
950 E Paces Ferry Rd NE, Ste 900
Atlanta, GA 30326-1382

US Attorney (Pensacola Office)
21 E Garden Street, Ste 400
Pensacola, FL 32502

US Attorney (Tallahassee Office)
111 N Adams Street
Fourth Floor
Tallahassee, FL 32301-7736

Spina Inv., Inc
10174 E Hualapai Drive
Scottsdale, AZ 85255-7167

Charles K Breland, Jr.
PO Box 7430
Spanish Fort, AL 36577

Hudgens & Associates, LLC
PO Box 1574
Daphne, AL 36526

Midsouth Scaffold Services, LLC
PO Box 18967
Memphis, TN 38181

ABG Caulking Contractors, Inc
PO Box 544
Goodlettsville, TN 37070

Habib Yazdi
135 Kingswood Drive
Daphne, AL 36526

Harold and Susan Rappaport
c/o Lara Fernandez, Esq
PO Box 1102
Tampa, FL 33601-1102

Richard Lamacchio
7146 Estero Blvd. #516
Ft. Meyers, FL 33931

William A Hopkins
659 Big Canoe
Big Canoe, GA 30143

Jon and Pam Marquess
1480 Roswell Rd. SE
Marietta, GA 30062

Aref and Rasha Rifai
4440 Devereux Drive
Pensacola, FL 32504

Daine and Kelly Sharpe
134 N Broadnax Street
Dadeville, AL 36853

Daisy Volcan
3304 Rae's Court
Augusta, GA 30909

David and Patty Rothstein
423 N Baylen Street
Pensacola, FL 32501

Eric Gleaton
5468 Champions Drive
Milton, FL 32571

Frank Castagna
4621 Canopy Rd
Pensacola, FL 32504

Jane Breland
14900 River Rd., Unit 701
Pensacola, FL 32507

Jean Nelson
8550-B Scenic Hwy
Pensacola, FL 32514